(161 App. Div. 262)

## LARKIN CO. v. TERMINAL WAREHOUSE CO.

(Supreme Court, Appellate Division, First Department.    March 6, 1914.)

1. INDEMNITY (§ 13*)—DEFECTIVE PREMISES—LIABILITY OF LANDLORD.

Plaintiff, defendant's lessee, sues to recover the amount it was compelled to pay for the death of its employé while using an elevator by the elevator suddenly dropping and stopping so as to knock a box off of the truck,. which struck the employé and knocked him into an adjoining light shaft which was not partitioned from the elevator shaft. Both plaintiff and defendant knew of the danger from such sources; the elevator having always been operated practically in the same manner. *Held*, that plaintiff and defendant were in pari delicto, both with respect to such negligent conditions and to the violation of ordinances by not partitioning the elevator and light shafts, so that plaintiff could not recover from defendant the amount it was compelled to pay for the death of its employé.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. §§ 29–35; Dec. Dig. § 13.*]

2. LANDLORD AND TENANT (§ 152*)—ALTERATIONS—CONSIDERATION.

A promise by the landlord, made after the lease was executed, to make certain changes in the elevator shaft, was not supported by a consideration; the lease not being executed in reliance upon the performance of such promise.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§. 152, 538–543, 545–549, 551–557; Dec. Dig. § 152.*]

Clarke, J., dissenting.

Appeal from Special Term, New York County.

Action by the Larkin Company against the Terminal Warehouse Company. From an order setting aside a verdict for plaintiff and from, a judgment of dismissal, plaintiff appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-LIN, CLARKE, and SCOTT, JJ.

Paul Armitage, of New York City (H. D. Donnelly, of New York. City, on the brief), for appellant.
B. L. Pettigrew, of New York City (Walter L. Glenney, of New York City, on the brief), for respondent.

LAUGHLIN, J.    This is an action by a tenant to recover of its land-lord the amount which it was obliged to pay in settlement of an action brought for the death of one of its employés; it being claimed by the plaintiff that as between it and the defendant the latter was primarily responsible.

The plaintiff is a corporation organized under the laws of West Virginia having its principal office and place of business in the city of Buffalo, N. Y., and is engaged in manufacturing and selling soaps, perfumes, and pure foods.    The defendant is a domestic corporation and owns certain stores at the foot of West Twenty-Seventh and Twenty-Eighth streets in the borough of Manhattan, New York, part of which. it uses for storage warehouse purposes and part of which it sublets.

On the 26th day of May, 1909, the plaintiff leased the fourth floor of defendant's seven-story terminal store No. 21, on the north side of Twenty-Seventh street between Eleventh and Twelfth avenues, for

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the period of 10½ months from the 15th day of June of that year "for the storage, packing and shipping of their products and premiums." The building was constructed in the year 1891, and at that time a freight elevator was erected and installed therein. The plaintiff at the time in question occupied the seventh floor of the same store under a yearly renewal of a lease first made on the 16th day of April, 1906, for storing new furniture only, and the sixth floor for the same purpose under a like renewal of a lease commencing on the 5th day of January, 1907, and the westerly half of the first floor for like purpose under a like renewal of a lease commencing on the 1st day of August, 1907. The basement and second floors were used by the defendant for storage warehouse purposes, and the rest of the building was used by other tenants for storage purposes.

The right to use the elevator was not given by the lease in express terms to the plaintiff, but, after describing the part of the building leased, the lease contains the usual phrase "with the appurtenances." The elevator was originally operated by steam power, but this was changed to electricity in 1902. The defendant maintained the elevator and furnished the power to operate it, but not an operator. The elevator was operated by a hand cable within reach of the door opening into the elevator shaft on each floor of the building. It was not equipped with any device for locking it when in or out of use, and could therefore be operated by pulling the cable at any part of the building no matter where the elevator was at the time. The tenants with the knowledge and acquiescence of the defendant, were accustomed to use the elevator for carrying freight to and from the different lofts; and the employés of the different tenants were accustomed to ride on it instead of attempting to ascend or descend by a stairway which was poorly lighted and more or less obstructed, adjacent to the elevator.

On the 3d day of February, 1910, one William Grosser, an employé of the plaintiff, while engaged in its business in using the elevator, met with an accident which resulted in his death. An action was brought by his administratrix against the plaintiff to recover the pecuniary loss sustained by his death. The complaint in that action, as finally amended, charged, in two counts, liability for negligence at common law, and under the statute for defects in the condition of the ways, works, and machinery. The plaintiff duly notified the defendant of the commencement of the action and demanded that it defend the same, but it failed so to do. The action was settled without trial, and on the failure of the defendant to reimburse the plaintiff this action was brought. The case was submitted to the jury, and a verdict was rendered for the amount for which the plaintiff settled the action against it and $500 counsel fees. The reasonableness of the settlement as to the amount was not questioned. At the close of the evidence a motion was duly made to dismiss the complaint. The court reserved decision pending the submission of the general issue and specific questions to the jury, and after the rendition of the verdict the motion was granted, evidently on the theory that the plaintiff and defendant were joint tort-feasors.

The dimensions of the platform of the elevator were 7 feet 1 inch by 7 feet 11 inches, and it had no railing. It was operated in a shaft

much larger than its dimensions, leaving a light shaft between it and the Twenty-Seventh street wall of the building of the width of 3½ feet at the first floor, and, owing to the tapering of the outer wall, 4 feet and 4 inches at the fourth floor, and at each floor there was a window in the outer wall. The part of the shaft in which the elevator ran was only separated from the light shaft by an angle iron about 6 inches above each floor and evidently a few inches in width vertically, to which just above each floor a small plate was fastened to afford access to the window. At the time of the accident, decedent and a fellow employé were engaged in moving boxes of salt and starch from the ground floor to the fourth floor. They piled 25 boxes in tiers, one above the other, extending somewhat higher than a man's head, on a low platform truck with no railing and pushed it onto the platform of the elevator, and both of them rode on the elevator, the decedent's fellow workman operating it, to the fourth floor. There, while both of them were standing on the platform in the act of pushing the truck off, the elevator suddenly dropped about three feet and stopped, and a box fell from the top of the pile on the truck and struck the decedent and precipitated him backward into the light shaft, and he fell to the bottom, sustaining injuries from which he died. The evidence shows that some one must have pulled the cable to thus start and stop the elevator; that it was not pulled by the decedent or his fellow employé who was working with him; and that just before the elevator moved a signal was given from another part of the building, not definitely located, and by some one, not identified, indicating an intention to move the elevator, by calling out: "Look out above!" "All right."

[1] The construction and operation of the elevator, with the exception of the change in motive power, remained the same from the time it was originally installed. Prior to the time the plaintiff took a lease of the fourth floor, both the plaintiff and the defendant were aware of the fact that at times the elevator when in use at one floor was moved by pulling the cable at another floor, and that property had been damaged thereby; and were equally aware of the facts from which danger was to be apprehended to employés working on the platform of the elevator, which was thus unprotected on the side of the open light shaft, should the elevator be suddenly moved without warning, and such dangers had frequently been a matter of discussion between their representatives. It is manifest, therefore, that both plaintiff and defendant were negligent, and, I think, in quite the same manner. The defendant was negligent in furnishing its tenants with a dangerous elevator, and the plaintiff was negligent in furnishing the same elevator for the use of its employés. In this view of the case it is manifest that the plaintiff and defendant are in pari delicto.

It is contended by the learned counsel for the plaintiff that his client was not equally at fault with the defendant for the reason that as between them the duty of maintaining the elevator rested on the defendant, and that the plaintiff was not at liberty to change it. It may well be that the plaintiff was not authorized to construct a partition between the light shaft and the elevator shaft proper; but the plaintiff was fully aware of all danger when it leased the fourth floor. It could then

have exacted any condition it saw fit or have refused to lease the premises. It could have insisted upon an agreement on the part of the defendant to make such changes either in the manner of operating the elevator, or in the construction of the shaft, as would remove the dangers incident to the operation of the elevator in its then condition. If it had done this and the defendant had failed to perform its contract obligation, there would doubtless have been a right of recovery over. Prescott v. Le Conte, 83 App. Div. 482, 82 N. Y. Supp. 411, affirmed 178 N. Y. 585, 70 N. E. 1108; Mowbray v. Meriweather, 1895, 2 Q. B. D. 640; The Steamship Lewis Luckenbach, 207 Fed. 66, 124 C. C. A. 626.

[2] This, however, the plaintiff failed to do. The evidence shows, it is true, that the plaintiff's representatives on the premises at different times complained with respect to the dangerous condition of the elevator, and at one time, shortly before the lease of the fourth floor was made, the plaintiff's New York branch manager, who subsequently represented the plaintiff in making the lease, spoke to the defendant's assistant secretary about it and suggested that some changes should be made to render the elevator more safe, and the assistant secretary replied, "We will get to that some day, or something like that, just a casual talk about the general conditions," and it appears that about the time the lease was made, or shortly thereafter, plaintiff's warehouse foreman complained to the defendant's superintendent and asked why some signal was not provided to prevent accidents, and the defendant's superintendent replied that "he would attend to it." If the defendant could be held liable to make changes and alterations on parol promise collateral to the lease, this evidence is insufficient to show any consideration for the promise, for it does not show any such promise at or before the execution of the lease or that the lease was executed in reliance upon the fulfillment thereof.

The learned counsel for the appellant further contends that the elevator was not constructed or maintained as required by regulations prescribed by the Bureau of Buildings pursuant to authority delegated and conferred by section 101 of the ordinances of the board of aldermen. The regulations so made, if duly served on the defendant—as to which there is no evidence—would, doubtless, have required the inclosure by itself of that part of the elevator and light shaft in which the elevator ran. If that had been done, the decedent might have suffered contusions; but it is highly improbable that he would have been killed by the box falling. It is claimed, but as already indicated it has not been shown, that this elevator was constructed or maintained in violation of law. But if the law required a wall or other partition between the elevator and the light shaft, the plaintiff was fully aware that it had not been complied with when it made the lease, and if, notwithstanding defendant did not undertake to make it a lawful structure, the plaintiff took the lease and directed the decedent to use the elevator, it was in pari delicto and is neither entitled to recover over nor to contribution. The plaintiff showed that there are simple well-known and practical safety devices that may be readily attached to the platform of such an elevator to grip the operating cable and thus render it impossible to

move or to draw the cable through the floor of the elevator, which is essential to start the elevator. The plaintiff, at least, owed as great a duty to decedent as defendant owed to it.

It follows therefore that the order and judgment should be affirmed, with costs.

INGRAHAM, P. J., and McLAUGHLIN and SCOTT, JJ., concur. CLARKE, J., dissents.