Birdie Amsterdam, J.
An action in negligence was commenced by the plaintiffs, Dora and Irving Rubinstein, against The Pennsylvania Railroad Company (hereinafter referred to as Penn Co.) and Bernard H. Cantor, to recover damages for personal injuries and for loss of services and medical expenses sustained when a train of Penn Co., at a railroad crossing, struck an automobile owned and operated by Cantor, in which plaintiffs were passengers.
A settlement was agreed upon between the plaintiffs and Cantor in the sum of $7,500, and upon payment plaintiffs executed releases to Cantor, reserving plaintiffs’ rights against Penn Co. and others.
Subsequently, Penn Co. caused a copy of its answer to be served upon Cantor, which contained a cross complaint for recovery over against Cantor, alleging that the negligence, if any, of Penn Co., was merely passive and secondary, and that Cantor was guilty of primary and active negligence. Prior to trial, Cantor moved at a Special Term of the court for dismissal of the plaintiffs’ complaint as against him and for dismissal of the Penn Co. ’s cross complaint. The first-mentioned branch of the motion was granted and the second was denied.
Some time after the institution of the said action, plaintiffs brought a separate action against The Central Railroad Company of New Jersey, sued herein as New Jersey Central Railroad (hereinafter referred to as Central Co.), charging it with failure to properly guard and maintain the railroad crossing. Like failure was one of the grounds of negligence that plaintiffs had asserted against Penn Co.
The two actions were consolidated and tried together before this court and a jury, and resulted in a verdict against Penn Co. and against Central Co., in favor of plaintiff wife for $32,000 and in favor of plaintiff husband for a total of $8,000 in his individual and derivative causes of action.
With the consent of all parties, the issues of law and fact raised in the cross claim were not submitted to the jury but were left for determination by the court. At the conclusion of the trial, Cantor moved for dismissal of the cross complaint, and decision was reserved.
The sole issue to be resolved is whether the liability of Penn Co. rests on passive negligence and whether Cantor was guilty of active negligence.
Briefly, the undisputed testimony established the following facts: The accident occurred at the La Reine Avenue grade crossing in Bradley Beach, New Jersey, on June 21, 1953, at approximately 3:45 p.m. There were no safety gates at *577 this crossing, which had three tracks owned by New York and Long Branch Railroad Company and used exclusively by Penn Co. and Central Co., pursuant to an agreement between the three companies whereby Penn Co. and Central Co. shared the costs of upkeep and maintenance. Geographically, the tracks run in a north-south direction. The most easterly of the tracks was the northbound main line track; the next track to the west was the southbound main line track; and the most westerly track was a siding track. La Reine Avenue runs in an east-west direction. Cantor was traveling in a westerly direction upon La Reine Avenue as he approached the crossing. Near the northeast curve were a shanty, foliaged trees, and buildings. In the middle of the roadway, east of the tracks and facing east, there was a stanchion with two circular discs located above it. To the south of the crossing was the railroad station. The train involved in the accident, which was owned and operated by Penn Co., was southbound on the middle track.
The testimony of the respective parties to this litigation as to the events immediately prior to the happening of the accident presents sharply disputed questions of fact and credibility.
The plaintiffs and Cantor testified in substance as follows: They were traveling along the westerly traffic lane; as they approached the crossing, Cantor brought the car to a stop for several seconds; there was no guard or watchman to apprise automobile drivers nearing the railroad crossing of the approach of any train, and they saw no train approaching; the discs on the stanchion were not operating; they heard no bells or whistles and saw no warning signals to indicate that a train was coming down the track; to their right, the shanty, trees and buildings obstructed their view and limited it to 100 feet to the north; Cantor then started to cross, proceeding at 20 to 25 miles per hour; before completing the crossing, the car was struck by a train, turned and thrown up against a stanchion which was west of the tracks. (It is conceded that the right front part of the train hit the right rear of the car.) The first time they saw the said train was just before the impact.
The testimony of the witnesses called on behalf of Penn Co. was essentially as follows: For a few minutes prior to and at the time of the accident, the circular discs on the stanchion were flashing; a watchman, facing west, was standing east of the tracks near the middle of the road, between the stanchion and the north curve; he was blowing a whistle and holding out a ‘ ‘ Stop ’ ’ sign into the westbound traffic lane; he did not see Cantor’s car before it started to cross; the train was southbound, traveling from Asbury Park to Bradley Beach, which is a *578 straight run; a steam whistle of the train was sounded and a 99-pound bell of the train was ringing; the engine man operating the steam engine was seated at the right side of the cab of the engine and, on nearing Bradley Beach, he reduced his speed, which had been 38 or 40 miles per hour, to 25 to 30 miles per hour (he had no speedometer); his view of the easterly side of the crossing, when he was about 100 to 200 feet from it, was blocked by the engine boiler; from there on, he had to rely on the fireman, who was seated at the left side of the engine cab; the fireman did not apprise him that the car was crossing; the first time he saw the car was when it was in front of the train, some 50 feet away from him. In an examination before trial, read into evidence in plaintiffs’ case, the fireman, who did not testify at the trial, stated, in substance, that he was on the left side of the cab of the engine, with open windows in front, to the left side, and in back of him; some 200 feet from the crossing, his view to the east was blocked by shrubbery, a building, and a watchman’s shanty; he first saw the car “ speed ” across when the train was coming upon the crossing; ho did not inform the engineer thereof.
Two eyewitnesses (who at the time of the accident were 13 years of age) testified that they saw the watchman, immediately prior to and at the time of the accident, standing in the roadway with a “ Stop ” sign; that they saw the discs in operation; that the Cantor car did not stop before crossing; that they heard the whistle of a train.
A written statement signed by one of the aforesaid (eye) witnesses and by her mother is inconsistent and contradictory to her testimony at the trial. According to her signed statement, she saw the car come to a stop before it crossed the tracks; she did not see the watchman until after the accident; she did not see a train approaching and was not sure whether she heard a whistle or whether bells and signal lights were working.
Since the tort was committed in the State of New Jersey, the law of that jurisdiction governs the rights and obligations of the parties involved (Conklin v. Canadian-Colonial Airways, 266 N. Y. 244).
Sections 48:12-54, 48:12-57 and 48 .T2-84 of the Public Utility Laws of the State of New Jersey, respectively, provide:
‘ ‘ Every company operating on a fixed track or tracks, freight or passenger trains or cars propelled by steam or electric power, shall provide protection to pedestrians and the traveling public at every crossing of its tracks by any public road which is improved by the joint action of the state and a municipality or county. Such protection may be in the form of safety gates, *579 flagmen, electric bell, electric signs or other recognized systems of alarm or protection approved by the board of public utility commissioners * * * The provisions of this section shall be construed to be mandatory and shall be operative without order or direction of the board.
“ Every railroad company shall place on each engine a bell weighing not less than thirty pounds which shall be rung continuously in approaching a grade crossing of a highway, beginning at a distance of at least three hundred yards from the crossing and continuing until the engine has crossed such highway, or a whistle * * * which shall be sounded, except in cities, at least three hundred yards from the crossing and at intervals until the engine has crossed the highway. For every default, the company operating such road shall pay a penalty of twenty dollars ($20.00) to be sued for by any informer within ten days after such penalty was incurred * * * Nothing herein shall take away any remedy for such neglect from any person injured thereby.
“ Whenever a railroad shall install any safety gates, bell or other device designed to protect the traveling public at any crossing, or has placed at such crossing a flagman, any person approaching such crossing, shall, during such hours as posted notice at the crossing shall specify, be entitled to assume that the safety gates or other warning appliances are in proper order and will be duly and properly operated, unless a written notice bearing the inscription ‘ out of order ’ be posted in a conspicuous place at the crossing, or that the flagman will guard the crossing with sufficient care whereby the traveler will be warned of any danger in passing over the crossing. In any action brought for injuries to person or property or for death caused at any crossing protected as aforesaid, no plaintiff shall be barred of the action because of the failure of the person injured or killed to stop, look and listen before passing over the crossing.”
Penn Co. argues that the sole basis upon which the jury could have returned a verdict against Penn Co. was a failure to warn of the approach of its train and that by reason thereof Penn Co. was a passive tort-feasor. It further maintains that Cantor drove his car over the crossing in the face of impending danger, and thus was guilty of an affirmative act of negligence.
If its contention were merited, then the law is well settled that ‘ ‘ a primary or principal wrong-doer is responsible for his negligent act, not only to the person directly injured, but also to one indirectly harmed by being cast in damages by operation of law for the wrongful act ”. (Tipaldi v. Riverside *580 Mem. Chapel, 273 App. Div. 414, 418, affd. 298 N. Y. 686; McFall v. Compagnie Maritime Belge, 304 N. Y. 314, 328.)
The court, however, is not in accord with Penn Co.’s contention. Based on the credible proof and in the light of all-of the surrounding circumstances in this case, the court is of the considered opinion that Penn Co. not only failed to give warning of the approach of its train, but also failed in the operation of its train to observe, for the protection of the interests of the plaintiffs and Cantor (the traveling public), that degree of care and vigilance that the circumstances justly demanded. Such failure on Penn Co.’s part constitutes active negligence barring any right of indemnity. In the absence of giving warning of the approach of the train, the engineer and fireman, whose view east of the tracks was blocked about 100 to 200 feet before the crossing, were not using reasonable care and prudence for the protection of the traveling public, commensurate with the hazard to be apprehended.
In Putvin v. Buffalo Elec. Co. (5 N Y 2d 447) in a very able opinion, Chief Judge Conway, speaking for the majority of the court, discussed the subject of indemnity in situations involving active and passive tort-feasors and stated at page 456: “It is frequently difficult to determine whether a defendant’s negligence has been active. This may be attributed, in part, to the fact that ‘ either a fault of omission or one of commission may constitute active negligence ’. (McFall v. Compagnie Maritime Belge, 304 N. Y. 314, 330, supra.) We think, however, that it is not so difficult to determine whether a defendant’s negligence has been passive. By that we mean that it seems to us that one cannot be guilty of passive negligence merely, if he has been guilty of a fault of commission. It is the omission or failure to perform a nondelegable type of duty (e.g., the duty of an owner of realty or a shipowner to furnish the injured party with a safe place to work), as distinguished from the failure to observe for the protection of the interests of another person that degree of care and vigilance which the circumstances justly demand, which constitutes passive negligence entitling one to indemnity (see McFall v. Compagnie Maritime Belge, 304 N. Y. 314, 329-339, supra; Schwartz v. Merola Bros. Constr. Corp., 290 N. Y. 145; Tipaldi v. Riverside Memorial Chapel, 273 App. Div. 414, 418, affd. 298 N. Y. 686).” (Emphasis supplied.)
By virtue of the fact that the court finds Penn Co. guilty of active negligence, the question of Cantor’s negligence becomes academic. However, assuming that Cantor was guilty of negligence, then Penn Co. and Cantor would be joint tort-feasors *581 in pari delicto, and the cross complaint could not be sustained. (Fox v. Western New York Motor Lines, 257 N. Y. 305; Larkin Co. v. Terminal Warehouse Co., 161 App. Div. 262, affd. 221 N. Y. 707; Messaro v. Long Is. R. R. Co., 274 App. Div. 939.)
Penn Go. has failed to sustain its onus of proof of passive negligence on its part. Consequently, the motion to dismiss the cross complaint is granted. This constitutes the decision of the court pursuant to section 440 of the Civil Practice Act. Settle judgment on notice to all parties, in accordance with the jury’s verdict and with the within determination.